2008 VT 79

## State of Vermont v. Eric Neil

[958 A.2d 1173]

No. 07-100

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 13, 2008

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Frank Skiba*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** In this interlocutory appeal pursuant to Rule 5 of the Vermont Rules of Appellate Procedure and 13 V.S.A. § 7403, the State appeals from a decision of the Caledonia County District Court suppressing cocaine found in the warrantless search of a pouch removed from defendant's pocket after he was placed under arrest pursuant to a warrant for failure to pay a $21 court fine. The State argues that the search was constitutionally permissible

as incident to a valid arrest and that the trial court therefore erred in its ruling. We affirm.

¶ 2. The undisputed facts are as follows. On April 13, 2006, at about 2:30 p.m., two officers of the St. Johnsbury Police Department recognized defendant walking down Portland Street and arrested him on an outstanding arrest warrant for failure to pay a $21 fine. See 13 V.S.A. § 7223 (failure to pay court-imposed fine may result in imprisonment for up to sixty days). After the arrest, and with defendant in custody, one of the officers conducted a pat-down search of defendant and removed a rolled dollar bill with white powdery residue on the ends from defendant's right front pants pocket, and then, from the left pocket, a soft, black pouch with a Velcro closure, approximately three inches by two inches in size. The Velcro pouch was a closed and opaque container. Without asking defendant for permission, the officer opened the Velcro flap on the pouch and, inside, found a clear, glassine envelope of cocaine. Defendant was cited for misdemeanor possession of cocaine, 18 V.S.A. § 4231(a)(1), and ordered to appear on June 5, 2006 for arraignment.

¶ 3. The arrest occurred during business hours on a weekday in downtown St. Johnsbury, near the courthouse. The arresting officer knew defendant. In one-half hour, after processing at the police station, defendant was released. There is no evidence in the record that prior to April 13 defendant was aware of the outstanding warrant or was evading arrest.

¶ 4. Defendant filed a motion to suppress the evidence found on his person, alleging that the search of the closed pouch violated his rights under the Fourth Amendment of the United States Constitution and Article 11 of the Vermont Constitution. Defendant later amended his motion, arguing that in the absence of exigent circumstances, the search of the closed container violated his Article 11 rights only. Defendant noted that safety concerns did not justify the search because the officers knew defendant and were not worried that the pouch contained a weapon. In addition, defendant argued that the search was not necessary to preserve evidence, because both defendant and the pouch were in the officers' custody.

¶ 5. The court held a hearing on the motion on January 4, 2007. On stipulated facts, the court granted defendant's motion, concluding that defendant had a legitimate expectation of privacy in the pouch and that the search was not justified by exigent

circumstances that made obtaining a warrant impracticable. The court found that the State "made no credible argument that the safety of the arresting officers required opening the pouch immediately." Furthermore, the court noted that even if exigent circumstances were present, Article 11 requires that, "when acting without a warrant, police operate in the least intrusive manner possible under the circumstances." The court concluded that the police could have asked for permission to search the pouch, and failing that, "could have easily seized the pouch, removed it from defendant, and secured it while the officers attempted to obtain a warrant to open it." The State requested an interlocutory appeal of the suppression order, and we granted the request.

¶ 6. On appeal, no issue is raised regarding the search of defendant's person or the seizure of the closed container incident to arrest. Rather, the question advanced is whether the warrantless search of the pouch, a closed container, was permissible under Article 11 absent a factual showing of exigent circumstances. A motion to suppress evidence presents mixed questions of fact and law, and we will uphold a trial court's factual findings unless they are clearly erroneous. *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. Our review of conclusions of law is de novo. *State v. Bauder*, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38.

¶ 7. The State argues that the search was lawful under Article 11 because a "search incident to arrest is a well-recognized exception to the warrant requirement." A broad warrantless search of an arrestee, the State continues, is justified by the need to search for weapons, and as a "reasonable mechanism to ensure that evidence would not be destroyed." As noted, defendant does not challenge the pat-down search or the seizure of the pouch, but instead argues that under Article 11 the police must get a search warrant before searching a closed container unless "exceptional" circumstances — risk of undue delay, destruction of evidence, or danger to officers — make getting a warrant impracticable.

¶ 8. The State urges this Court not to limit "such searches to a case-by-case analysis of the facts presented to the law enforcement officer." Quoting an oft-cited treatise, the State argues that clear exceptions to the warrant requirement — ones that prescribe permissible police conduct in terms of "standardized procedures" — are preferable to "more sophisticated but less precise rules" requiring on-the-spot decision-making. See 3 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 5.2(c),

at 107 (4th ed. 2004). In *United States v. Robinson*, the United States Supreme Court, in favor of clear bright-line rules, held that the full search of a suspect incident to a lawful arrest is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." 414 U.S. 218, 235 (1973) (quotation omitted). Therefore, under the Fourth Amendment, a warrantless search incident to a valid arrest is per se constitutional, regardless of whether exigent circumstances are present.

■ ■ ¶ 9. Although the search incident to arrest here would be permissible under *Robinson*, Article 11 of the Vermont Constitution may afford greater protections than the Fourth Amendment.[1] *State v. Savva*, 159 Vt. 75, 84, 616 A.2d 774, 779 (1991). Vermont's Constitution protects the rights and liberties of its citizens independent of the "ebb and flow" of the United States Supreme Court's constitutional jurisprudence. *State v. Jewett*, 146 Vt. 221, 224, 500 A.2d 233, 235 (1985). As we said in *State v. Badger*:

> Although the Vermont and federal constitutions have a common origin and a similar purpose, our constitution is not a mere reflection of the federal charter. Historically and textually, it differs from the United States Constitution. It predates the federal counterpart, as it extends back to Vermont's days as an independent republic. It is an independent authority, and Vermont's fundamental law.

---

[1] Vermont is not alone in its departure from federal precedent in this area. See, e.g., *State v. Hardaway*, 2001 MT 252, ¶ 57, 36 P.3d 900 (the scope of a search incident to arrest must be commensurate with underlying purposes, and specific and articulable exigent circumstances are required); *People v. Gokey*, 457 N.E.2d 723, 724 (N.Y. 1983) (stating that under the New York Constitution, "a warrantless search incident to arrest [is] unreasonable unless justified by the presence of exigent circumstances"); *Commonwealth v. Timko*, 417 A.2d 620, 623 (Pa. 1980) ("[A]bsent exigent circumstances, a warrantless search of luggage or other personal property in which a person has a reasonable expectation of privacy is not permissible."); *State v. Stroud*, 720 P.2d 436, 439 (Wash. 1986) ("[The] Washington State Constitution affords individuals greater protections against warrantless searches than does the Fourth Amendment."); see also *State v. Owens*, 729 P.2d 524, 527-28 (Or. 1986) (fact of arrest sufficient to justify a search of closed containers only "when it is reasonable to believe that evidence of a crime for which the person was arrested could be concealed there").

141 Vt. 430, 448-49, 450 A.2d 336, 347 (1982) (citations omitted). "[F]reedom from unreasonable government intrusions into legitimate expectations of privacy [is] a core value protected by Article 11." *Savva*, 159 Vt. at 87, 616 A.2d at 781 (citing *State v. Kirchoff*, 156 Vt. 1, 6, 587 A.2d 988, 992 (1991)). The "warrant requirement is not a starting point for deriving exceptions that balance citizens' interest in privacy against law enforcement's interest in expeditious searches. Rather, it *is* the balance . . . ." *Id.* at 85, 616 A.2d at 780. Thus, exceptions to the warrant requirement must be "jealously and carefully drawn." *Id.* at 85, 616 A.2d at 779 (citations omitted).

¶ 10. Our divergence from federal precedent governing warrantless searches of closed containers is well-settled. In *Savva*, we held that under Article 11 the police are prohibited from searching a closed container found inside an arrestee's vehicle without first obtaining a warrant, absent exigent circumstances. *Id.* at 90, 616 A.2d at 782. Very recently, in *Bauder*, we acknowledged the vitality of this holding, again expressly rejecting broad search-incident-to-arrest authority. 2007 VT 16, ¶ 12. We reasoned that the federal bright-line tests "fail to do justice to the values underlying Article 11." *Id.* Contrary to federal precedent, a warrantless search of a container is unreasonable under Article 11 unless the exigencies are *"factually and narrowly tied"* to the circumstances "that rendered a warrant application impracticable." *Id.* ¶ 20 (emphasis added). "Absent such circumstances, Article 11 simply forbids a warrantless search."[2] *Id.* The principles announced in *Savva* and *Bauder* control the case at bar.[3]

---

[2] The State posits that precluding the search of closed containers at the time of arrest absent exigent circumstances could have "irrational consequences." For example, the State argues that the police should be permitted to search a defendant's wallet to confirm identity rather than continuing with a more intrusive detention. We decline to decide the case before us on the basis of a hypothetical. Here, defendant's identity was known to the officers at the time of the arrest, and no claim has been made that opening the pouch was justified by anything other than blanket search-incident-to-arrest authority.

[3] The State urges us to consider our decision in *State v. Greenslit*, where we noted that "[i]t is axiomatic that a search incident to a lawful arrest is constitutional." 151 Vt. 225, 227, 559 A.2d 672, 673 (1989) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). *Greenslit* is inapposite primarily because it involved a challenge brought solely under the Fourth Amendment. As noted above, a search that is lawful under the Fourth Amendment is not necessarily lawful under Article 11. Moreover, the facts in *Greenslit* were materially different from the facts here.

■ ¶ 11. We are cognizant that *Savva* involved a closed container found in an arrestee's vehicle, and not on his person, but we see no reason why a container seized from the pocket of an arrestee should be less protected than one seized from his vehicle.[4] In *Savva*, we noted that the "automobile exception" to the Fourth Amendment was justified by the inherent mobility of the automobile, which reduced a person's expectations of privacy and increased the risk of losing evidence. 159 Vt. at 80-81, 616 A.2d at 777. But we also held that personal luggage located in the motor vehicle of an arrestee is protected under Article 11. *Id.* Here, defendant had an expectation of privacy in the contents of the container in his pocket, as the defendant in *Savva* did in the contents of a container in his vehicle.[5]

■ ¶ 12. When a reasonable expectation of privacy is implicated, the State has the burden of showing that the circumstances of defendant's arrest justified a warrantless search. See *Savva*, 159 Vt. at 91, 616 A.2d at 783 (the burden is on the State to show "undue risk to the evidence-gathering process or public safety"); see also *Kirchoff*, 156 Vt. at 13, 587 A.2d at 996 ("[W]e differ from

---

Importantly, *Greenslit* did not involve the warrantless search of a closed container properly seized from an arrestee. In *Greenslit*, an officer approached a parked vehicle after determining that the owner's license was suspended, saw smoke coming from inside the vehicle, and smelled burning marijuana. The search consisted of the officer ordering the occupants to turn over any drugs, which they did. The officer suspected that a crime was being committed, had probable cause to arrest the suspect, and searched the arrestee to prevent destruction or concealment of evidence of that crime. And contrary to the present case, where defendant does not challenge the initial search of his pockets, the defendant in *Greenslit* challenged *only* the legality of the initial search of his person. *Id.* Thus, *Greenslit* has no impact on our analysis here.

[4] Importantly, we refrain from drawing distinctions between worthy and unworthy containers. *Savva*, 159 Vt. at 89-90, 616 A.2d at 782.

[5] In *Chimel v. California*, 395 U.S. at 763, the United States Supreme Court limited the scope of a permissible search incident to arrest to areas within the immediate control of the arrestee. In *New York v. Belton*, 453 U.S. 454, 460 (1981), relying on *Chimel*, the Court created a "bright-line" rule allowing an officer to search the *passenger* compartment of a car — and any containers found within — incident to arrest, regardless of exigencies. In *Savva*, we expressly declined to consider *Belton* because the containers in *Savva* were not in the passenger compartment of the vehicle. 159 Vt. at 91, 616 A.2d at 783. The fact that in *Savva* the containers were not in the immediate control of the arrestee does not affect our analysis in this case of defendant's reasonable expectation of privacy in the pouch in his pocket, because once removed from his pocket it too was no longer within his control.

federal doctrine by placing on the State the burden to prove that a warrantless search of open fields is not prohibited under [Article 11].”). The State advances no meritorious argument in support of an exception to the requirement, or that the warrantless search was justified on any basis other than blanket search-incident-to-arrest authority, and the evidence must therefore be suppressed unless exigent circumstances existed. *Bauder*, 2007 VT 16, ¶ 21.

¶ 13. In this case, the record supports the trial court's finding that exigent circumstances were not present. The State argues that an “officer may search incident to arrest for [a]ny weapons that the [arrestee] might seek to use to resist arrest or facilitate an escape.” While this is true generally, the exigency must be factually and narrowly tied to the circumstances that rendered a warrant application impracticable. *Id.* ¶ 20. Here, the officers knew defendant and knew that he had no history of violent behavior or carrying weapons. The evidence does not show, nor is it argued, that the officers subjectively believed that the circumstances necessitated a warrantless search. The State concedes that the pouch was not threatening or suspicious. With defendant in custody, once the officers seized the pouch, any danger to the officers or the public was eliminated.

¶ 14. Likewise unavailing is the State's assertion that “[t]he search of [the] pouch was a reasonable mechanism to ensure that evidence would not be destroyed.” Again, the seizure of the pouch by the officers eliminated the risk of destruction of the evidence. Defendant concedes that the seizure of the pouch was proper. Once the pouch was in police custody, the search was not necessary to preserve evidence. Because the arrest occurred during business hours on a weekday, there was no risk of undue delay in obtaining a search warrant. The courthouse was open, and, as it happens, was nearby. In fact, defendant was in front of a judge within a half-hour to pay his fine. Under these circumstances, it was far from impracticable for the police to apply for a search warrant.

¶ 15. Thus, because the State has made no showing of exigent circumstances to justify the warrantless search of defendant's pouch, the evidence found therein was properly suppressed.

*Affirmed.*