987 A.2d 1000 (2009)
2009 VT 108
In re C.C., Juvenile.
No. 08-287.
Supreme Court of Vermont.
November 6, 2009.
Keith W. Flynn, Orleans County State's Attorney, and Alan C. Franklin, Deputy State's Attorney, Newport, for Plaintiff-Appellee.
Michael Rose, St. Albans, for Defendant-Appellant.
*1001 Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
DOOLEY, J.
¶ 1. Defendant challenges the trial court's denial of his motion to suppress an ecstasy pill removed from his pocket without a warrant during a weapons pat-down. He argues that the State did not meet the "immediately apparent" probable cause standard for removal of the pill under the "plain-feel" doctrine, an exception to the Fourth Amendment's warrant requirement. The State responds that the warrantless removal of the pill was legal under the plain-feel doctrine because the officer was in a lawful position to feel the pill and its incriminating character, and that he had the lawful right to access the pill. We agree with defendant, and reverse and remand.
¶ 2. The trial court found the following facts. A Newport City police officer pulled over a speeding vehicle on October 30, 2007. When the officer surveyed the vehicle for passengers, he recognized one of the occupants as D.K.a minor with whom he was familiar and who had an outstanding warrant for fleeing Department for Children and Families custody. At the time of the traffic stop, defendant was seated in the rear passenger seat of the vehicle. D.K., in an effort to flee, attempted to push past a second Newport officer at the scene. His efforts were futile, and he was detained by the officers. A subsequent pat-down of D.K. revealed that he was carrying a .22 caliber handgun, marijuana, and other illegal drugs in pill form. The marijuana and pills were found in different pockets. D.K. was then placed in custody, and one of the officers proceeded to pat down defendant. The trial court inferred, based on trial testimony from one of the officers at the scene, that the pat-down of defendant was conducted with more focus than a normal pat-down because a weapon and drugs were found on defendant's fellow passenger, D.K.
¶ 3. During the pat-down of defendant, the officer felt a bulge which he testified was similar to what D.K. had in his pocket. The officer believed that what he felt was contained in a plastic package, and he later testified that he thought at the time that it was marijuana. Upon further questioning at the suppression hearing, the officer stated that he had believed that what he felt was "dope." The trial court stated that the officer "was not particularly clear in his memory of the events of that night," and the court inferred from his testimony that he believed what he felt to be some form of illegal drug contraband, principally because of the feel of the packaging. The officer ultimately pulled defendant's pocket inside out and discovered a bag containing twenty-eight pills, one of which was an ecstasy pill.
¶ 4. The officer seized the pills and arrested defendant. Later, defendant was charged with possessing less than 2 grams of ecstasy in violation of 18 V.S.A. § 4235(b)(1). Defendant entered a denial in response to this charge and then filed a motion to suppress the ecstasy pill. After conducting an evidentiary hearing, the trial court denied his motion to suppress. Defendant then entered a conditional admission and was placed on juvenile probation.
¶ 5. In denying the motion to suppress, the trial court found that the officer had probable cause to search and seize the contents of defendant's pockets because he had "a sufficient and reasonable belief that what he felt in [defendant's] pockets was contraband, despite his mistaken guess as to its initial nature." The belief was sufficient and reasonable, according to the trial court, because defendant was a co-passenger *1002 in the same car as D.K., who had just been lawfully arrested, the officers had found in D.K.'s pockets baggies of illegal drugs, and the feel of a similar baggie in defendant's pocket allowed for a reasonable inference that defendant was also carrying an illicit substance.
¶ 6. Defendant appeals the denial of his motion to suppress, arguing that the trial court's legal conclusion is not supported by adequate findings of fact and that the seizure of the content of defendant's pockets violated the United States and Vermont Constitutions.[1] We conclude that the State failed to sustain its burden of proving that the seizure did not violate the United States Constitution, and that the court erred in denying defendant's motion to suppress.
¶ 7. In reviewing a motion to suppress, we review the trial court's legal conclusions de novo, State v. Chapman, 173 Vt. 400, 402, 800 A.2d 446, 448 (2002), and its findings of fact under a clearly erroneous standard, State v. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280.
¶ 8. The Fourth Amendment of the United States Constitution protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. The United States Supreme Court has decided two pivotal Fourth Amendment cases regarding protective pat-downs, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In Terry, the Court held:
[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
392 U.S. at 30, 88 S.Ct. 1868. The Court subsequently expanded upon Terry in Dickerson by holding that police officers may seize nonthreatening contraband detected during a protective pat-down if the search stays within the Terry boundaries. Dickerson, 508 U.S. at 373, 113 S.Ct. 2130. The Dickerson Court stated:
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
*1003 Id. at 375-76, 113 S.Ct. 2130. The Court justified the plain-feel doctrine on the grounds that "[t]he seizure of an item whose identity is already known occasions no further invasion of privacy" and that a "suspect's privacy interests are not advanced by a categorical rule barring the seizure of contraband plainly detected through the sense of touch." Id. at 377, 113 S.Ct. 2130.
¶ 9. We recognized the plain-feel doctrine in State v. Ford, 2007 VT 107, ¶ 12, 182 Vt. 421, 940 A.2d 687, but we did not discuss the scope or application of this doctrine because the Ford trial court failed to make any findings of fact with respect to the plain-feel doctrine. In applying the "immediately apparent" standard in the context of a plain-view case, we recognized that the United States Supreme Court has equated the phrase "immediately apparent" with probable cause. State v. Trudeau, 165 Vt. 355, 359, 683 A.2d 725, 728 (1996). For an item's incriminating character to be immediately apparent, there must be "probable cause to associate the property ... with criminal activity." Id. (quotations omitted). "Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime ...." Id. (quotations omitted); see also United States v. Schiavo, 29 F.3d 6, 9 (1st Cir.1994) (upholding district court's conclusion that when officer is unable to identify contents of a bulge in a jacket pocket, plain-feel doctrine does not apply). In evaluating whether probable cause exists, we "must consider the totality of the circumstances" surrounding the search. State v. Guzman, 2008 VT 116, ¶ 11, 184 Vt. 518, 965 A.2d 544; accord Cost v. Commonwealth, 275 Va. 246, 657 S.E.2d 505, 507 (2008) ("[T]he determination whether a law enforcement officer had sufficient probable cause to seize contraband from a person in the course of a Terry pat-down search requires a consideration of the totality of the circumstances surrounding the search, as well as a consideration of the officer's knowledge, training and experience.").
¶ 10. The State has the burden to prove that when the officer conducted the pat-down of defendant it was immediately apparent to the officer that the item in defendant's pocket was contraband or other evidence of a crime. See United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). The parties do not dispute that the officer's pat-down of defendant was lawful. At issue here is whether the officer had probable cause to seize the contents of defendant's pocket under the plain-feel doctrine. We disagree with the trial court and conclude that the State failed to prove that the officer had probable cause.
¶ 11. For probable cause to exist, a reasonable officer must have been able to perceive the contraband or evidentiary nature of the object before its seizure. See United States v. Gibson, 19 F.3d 1449, 1451 (D.C.Cir.1994) (requiring suppression when the government did not adequately explain "how a hard, flat, angular object in someone's pocket would lead a law enforcement officer of reasonable caution to believe an offense had been or is being committed"); State v. Williams, 220 Ga. App. 100, 469 S.E.2d 261, 263 (1996) (affirming trial court's suppression of evidence because object's contour did not make itself readily apparent to officer who testified that he "really couldn't tell" what kind of contraband was in defendant's pocket, but only "that it was something in a bag"); State v. Beveridge, 112 N.C.App. 688, 436 S.E.2d 912, 916 (1993) (holding that when a pat-down only revealed that *1004 the defendant had a plastic bag in his pocket, it must be immediately apparent that the contents of a plastic bag were contraband for the officer to have probable cause); Cost, 657 S.E.2d at 508 ("[I]t is self-evident that if an item may just as well be a legal medication dispensed in capsule form or a capsule containing an illegal drug, its character as the latter cannot be readily apparent by feeling a suspect's outer clothing that contains the item inside."). The officer did not testify that he felt anything unique about the bag in defendant's pocket which would indicate that contraband was contained in the bag. See Commonwealth v. Stevenson, 560 Pa. 345, 744 A.2d 1261, 1267 (2000) (requiring officer to "explain what it was about the mass or contour of the particular package felt" that led him to the conclusion that the package contained cocaine). The officer's initial, but mistaken, suspicion that the bag would contain marijuana shows that he had not perceived the nature of the bag's contents, as the feel of a plastic bag containing marijuana does not correspond to the feel of a bag with twenty-eight pills in it.
¶ 12. We are left primarily with the officer's identification of the presence of a plastic bag in defendant's pocket, combined with any relevant inference that can be drawn from the contraband found in the search of D.K. First, we decline to hold that the mere possession of a plastic bag in a pocket is sufficiently incriminating to render it immediately apparent that the contents of that bag are contraband. In reaching this conclusion, we recognize that courts have split on whether an officer may seize a container that is not in itself contraband and the contents of which are unidentifiable prior to the seizure, yet is known to be routinely used to package or contain drugs. See Ball v. United States, 803 A.2d 971, 976-78 & nn. 4-5 (D.C.2002) (listing cases).
¶ 13. Our case is similar to Murphy v. Commonwealth, 264 Va. 568, 570 S.E.2d 836 (2002), and we find the reasoning of that case persuasive. In Murphy, the Supreme Court of Virginia held that marijuana contained in a plastic bag in the suspect's pants pocket was illegally seized during a pat-down search because the character of the bag's contents as contraband was not immediately apparent from the officer's tactile perception and, thus, the officer did not have probable cause to seize the bag and its content without a warrant. Id. at 839-40. In so holding, the court distinguished between the situation of when the officer is able to identify the object inside the defendant's pocket as marijuana and when the officer can "establish[] only that the character of the object as a plastic bag was immediately apparent from the `pat down' search, and that he knew from his training and experience that plastic bags often are used to package marijuana." Id. at 839; see also Ray v. State, 849 So.2d 1222, 1226 (Fla.Dist.Ct. App.2003) (holding that merely feeling plastic baggie, without something unique about the package that would indicate narcotics were contained within, even though narcotics are frequently packaged in plastic baggies, is not enough to establish probable cause); State v. Henderson, 263 Ga.App. 880, 589 S.E.2d 647, 650 (2003) (holding that "at a minimum, the officer must testify that, based on his experience, the item's contour or mass makes its identity as contraband immediately apparent," and that the evidence in this case did not meet that threshold because it "merely established that he felt a plastic bag and had no doubt it contained contraband because contraband is frequently packaged in plastic bags and the coin pocket is a well-known place for individuals to hide drugs"); Commonwealth v. Stackfield, 438 Pa.Super. 88, 651 A.2d 558, 562 (1994) *1005 (overturning trial court's conclusion that the item felt was immediately recognized as contraband, because the officer felt and recognized only a baggie, and "[a] zip-lock baggie is not per se contraband, although material contained in a zip-lock baggie may well be.").
¶ 14. We also recognize that there is more relevant information here. The trial court heavily weighted the fact that a co-passenger of defendant was also found with contraband inside a plastic bag in his pocket and concluded that it was immediately apparent that defendant had contraband based on the officer's experience with D.K. The logic is that if a bag found on D.K. contained contraband then a bag found on defendant is likely to contain contraband. We think the inference is too broad to make the presence of contraband immediately apparent. There is no connection between D.K. and defendant, other than that they were passengers in the same vehicle. See Murphy, 570 S.E.2d at 839-40 (holding that lack of probable cause to seize pocket contents was not altered by fact that the defendant "was present in a residence that was the subject of a search warrant for illegal drugs" because the record "contains no evidence linking him to the suspected presence of those drugs"). The vehicle was stopped for speeding; there was no evidence of drug activity involving the vehicle. As we emphasize above, the officer was unable to identify the form of the contraband until it was removed from defendant's pocket. The record reveals no evidence that defendant attempted to flee, as D.K. did, or otherwise engaged in any suspicious or incriminating behavior.
¶ 15. As there were no other facts or circumstances in evidence that would add to the officer's belief that the plastic bag contained illegal drugs, we conclude that the incriminating character of the contraband located in defendant's pocket was not immediately apparent to the officer and thus the officer did not have probable cause under the plain-feel doctrine to remove the contents of defendant's pocket without a warrant. Therefore, defendant's Fourth Amendment rights were violated, and the ecstasy pill seized from defendant's pocket should have been suppressed.
Reversed and remanded.
JOHNSON, J., concurring.
¶ 16. As the author of the majority opinion so succinctly stated ten years ago:
[W]hen faced with a choice between deciding a constitutional case on state groundsyielding a final answer in the form of "adequate and independent state grounds to support our judgment"  and a construction of the federal constitution that faces an uncertain future given the state of applicable federal principles, our duty is to choose the former course of action.
Chittenden Town Sch. Dist. v. Dep't of Educ., 169 Vt. 310, 319, 738 A.2d 539, 547 (1999). I agree. Accordingly, while I concur with the majority's suppression of the evidence seized from defendant's pocket based on the inapplicability of the so-called plain-feel exception to the warrant requirement, I believe that our decision should be grounded on the Vermont Constitution, which was argued by the parties and is not subject to further review under the vagaries of the federal doctrine.
¶ 17. The above-quoted statement was paraphrasing a previous case in which this Court exhorted attorneys to rely on the Vermont Constitution and explained why we should resolve claims based on our own constitution. See State v. Badger, 141 Vt. 430, 447-49, 450 A.2d 336, 346-47 (1982) (stating reasons for resolving claims under Vermont Constitution); State v. Jewett, *1006 146 Vt. 221, 224, 500 A.2d 233, 235 (1985) (noting "unparalleled opportunity" of Vermont lawyers "to aid in the formulation of a state constitutional jurisprudence that will protect the rights and liberties of our people, however the philosophy of the United States Supreme Court may ebb and flow"). We acknowledged in Badger that reviewing claims under state constitutional law might seem superfluous at first blush, but we cited several reasons why resolution of a defendant's claims under the Vermont Constitution is essential to the sound and final disposition of a case. Badger, 141 Vt. at 447, 450 A.2d at 346. One reason concerns "comity between this Court and the United States Supreme Court." Id. In effect, we act as an intermediate appellate court in evaluating claims under the federal constitution. Id. at 448, 450 A.2d at 346. Consequently, when we construe federal constitutional doctrine, particularly when, as here, federal and state courts are split on how they apply the doctrine, we run the risk of the United States Supreme Court reviewing and potentially reversing our decision, only to have this Court later reinstate the decision on state constitutional grounds. Id. at 447-49, 450 A.2d at 346-47. The Supreme Court should not have "to waste its scarce resources on illusory controversies." Id. at 448, 450 A.2d at 347.
¶ 18. The instant appeal presents precisely the type of circumstances that prompted this admonition in Badgerfederal and state courts are split on how narrowly they construe the "plain-feel" exception, and this Court has a well-developed independent Article 11 jurisprudence, particularly with respect to closed containers. The federal "plain-feel" exception is a questionable extension of the "plain-view" exception to the warrant requirement. See Minnesota v. Dickerson, 508 U.S. 366, 374-76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (justifying adoption of "plain-feel" exception to warrant requirement by analogizing it to "plain-view" exception). Despite the Supreme Court's avowed desire to foreclose any invasion of privacy beyond that necessary to assure the investigating officer's safety, id. at 373, and its stated belief that the probable cause requirement would ensure against excessively speculative seizures, id. at 373-76, many federal and state courts have applied the "plain-feel" exception to allow warrantless searches in situations where the identity of the object felt was not "immediately apparent" except in the sense that it was the type of container commonly used to carry drugs (in addition to many other items). See Ball v. United States, 803 A.2d 971, 976 (D.C.2002) (noting split among courts "on whether, under the plain feel doctrine, an officer may seize a container that is not in itself contraband and does not conform to the shape of contraband (such as a medicine bottle or matchbook), yet is known to be routinely used to package or contain drugs"); see also K. Reynaga, Annotation, Application of "Plain-Feel" Exception to Warrant RequirementsState Cases, 50 A.L.R.5th 581, §§ 11-18 (1997) (collecting state court cases applying "plain-feel" doctrine to particular types of containers and objects). Courts have extended the reach of the "plain-feel" exception in this way by focusing on other attendant circumstances, apart from the feel of a container, that may have informed the investigating officer's belief as to what the otherwise ordinary and unsuspicious container actually contained. Ball, 803 A.2d at 976-78.
¶ 19. Thus, the "plain-feel" exception has led to the admission of seized evidence that in fact was not "already known" when it was touched. See Dickerson, 508 U.S. at 377, 113 S.Ct. 2130 (reasoning that "[t]he seizure of an item whose identity is already known occasions no further invasion *1007 of privacy"). As a result, a minority of state courts, including the New York Court of Appeals, has rejected outright the "plain-feel" doctrine as an exception to the warrant requirement. People v. Diaz, 81 N.Y.2d 106, 595 N.Y.S.2d 940, 612 N.E.2d 298, 299, 303 (N.Y.1993) (declining to adopt "plain-feel" exception as extension of "plain-view" exception, and citing other states that at the time had arrived at the same conclusion).[2] The New York high court recognized that "plain feel" is inherently less reliable and more intrusive than "plain view," further reasoning that "plain view" cannot logically be extended to concealed items whose identities cannot be confirmed until those items are actually seen upon a further search. Id. at 301-02. In effect, then, whereas "plain view" does not require any further search or additional intrusion, "plain feel" automatically requires an additional search and intrusion. Id. at 302.
¶ 20. Whether we ultimately follow those states rejecting outright the "plain-feel" exception, or whether instead we adopt the exception but narrowly restrict it to allow the admission of evidence seized without a warrant based on touch only when its identity was "immediately apparent" from a pat-down that did not stray beyond a search for weapons, see Dickerson, 508 U.S. at 375, 113 S.Ct. 2130 (limiting extent of exception), we plainly would choose one of those options under the Vermont Constitution. "We have consistently held that Article 11 provides greater protections than its federal analog, the Fourth Amendment." State v. Cunningham, 2008 VT 43, ¶ 16, 183 Vt. 401, 954 A.2d 1290. For example, we have declined to follow Fourth Amendment jurisprudence allowing more permissive searches and seizures regarding: (1) automobile searches incident to arrest, State v. Bauder, 2007 VT 16, 181 Vt. 392, 924 A.2d 38, §§ 15-20, 181 Vt. 392, 924 A.2d 38 (refusing to adopt holding in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that police officers may routinely search automobiles and containers in them incident to arrest irrespective of need to assure safety or protect evidence); (2) police exit orders from automobiles, State v. Sprague, 2003 VT 20, ¶¶ 14-20, 175 Vt. 123, 824 A.2d 539 (refusing to adopt holding in Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that police officers making routine stops may order motorists to exit vehicle absent any danger to officer or particularized suspicion of criminal activity); and (3) police searches of containers following automobile stops, State v. Savva, 159 Vt. 75, 616 A.2d 774 (1991) (prohibiting police officers from searching closed containers whose contents are not in plain view following automobile stop, and refusing to adopt Supreme Court caselaw not requiring particularized showing of exigent circumstances to search automobiles following stop).
¶ 21. In short, "[o]ur divergence from federal precedent governing warrantless searches of closed containers is well-settled." State v. Neil, 2008 VT 79, ¶ 10, 184 Vt. 243, 958 A.2d 1173. In Neil, we saw "no reason why a container seized from the pocket of an arrestee should be less protected than one seized from his vehicle," reasoning that defendant had an expectation of privacy in the contents of the container. Id. ¶ 11. We have scrupulously maintained the principleeven in the *1008 face of contrary United States Supreme Court holdings under the Fourth Amendmentthat Article 11 is intended to vest responsibility and authority in the judiciary to review and restrain overreaching searches and seizures by the government. State v. Berard, 154 Vt. 306, 310-11, 576 A.2d 118, 120-21 (1990). Whatever the evolving federal standard, or ebb and flow of United States Supreme Court decisions, we abide by the principle that the warrant requirement is the rule, and that any exceptions to that requirement must be jealously and carefully drawn. Id.
¶ 22. The majority's opinion today reflects this principle and demonstrates that, if we decided this case under the Vermont Constitution, we would, at minimum, narrowly construe the "plain-feel" exception, assuming we did not reject it outright. See State v. Ford, 2007 VT 107, ¶ 10, 182 Vt. 421, 940 A.2d 687 ("This Court has not yet considered the scope or application of the so-called plain-feel doctrine announced in Dickerson."). Defendant seeks suppression of the evidence under the Vermont Constitution. Local law enforcement officers and officials need to know the extent of citizens' rights under Article 11, which we have consistently construed to place greater restrictions on police activity than that allowed by the United States Supreme Court under the Fourth Amendment.
¶ 23. Given these circumstances, we should decide this case under our own Constitution to foreclose any possibility that the United States Supreme Court would review the case and wind up wasting its scarce resources on an illusory controversy. Badger, 141 Vt. at 448, 450 A.2d at 347. This institutional concern is buttressed by our duty to enforce the Vermont Constitution and to respond to defendant's claims that he is entitled to protection under that constitution. Id. at 448-49, 450 A.2d at 347. Defendant has invoked the protection of the Vermont Constitution, which may provide adequate and independent state grounds for relief that would be final and not subject to further review by the United States Supreme Court. See id. at 449, 450 A.2d at 347 ("If our state constitution is to mean anything, it must be enforced where it is the only law capable of providing a final answer to a claim, and a party, such as this defendant, has invoked its protections."). In my view, "[o]ur duty to enforce the fundamental law of Vermont, our role in the federalist system, and our obligation to the parties thus compel us to address the defendant's suppression motion[] under the Vermont Constitution." Id.
NOTES
[1] Because we hold that the Fourth Amendment adequately protects defendant's rights in this case, we have not reached defendant's argument that the search violated Chapter I, Article 11 of the Vermont Constitution. Our conclusion that it is unnecessary to reach the Vermont constitutional argument in this case is not a comment on the scope of protections afforded under Article 11. See State v. Cunningham, 2008 VT 43, ¶ 16, 183 Vt. 401, 954 A.2d 1290 ("We have consistently held that Article 11 provides greater protections than its federal analog, the Fourth Amendment."). Contrary to the view of the concurrence, we do not believe that our application of the Fourth Amendment faces an "uncertain future."
[2] Although Diaz was decided before Dickerson, the Diaz court explicitly stated that its decision did not depend on federal law, but rather "rest[ed] equally on an independently adequate State ground," and is therefore still the law in New York. Diaz, 595 N.Y.S.2d 940, 612 N.E.2d at 302 n. 2.