2010 VT 65

## State of Vermont v. Jorge L. Delaoz

[22 A.3d 388]

No. 09-001

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 16, 2010

Motion for Reargument Granted August 30, 2010

Opinion on Reargument Filed March 18, 2011

*William H. Sorrell*, Attorney General, *David Tartter* and *John Treadwell*, Assistant Attorneys General, and *Andrew Delaney*, Law Clerk, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, *Rebecca Turner*, Appellate Defender, and *Rachel Westropp*, Law Clerk (On the Brief), Montpelier, for Amicus Curiae Office of the Defender General.

¶ 1. **Johnson, J.** Following a jury trial, defendant was convicted of felony possession of cocaine, misdemeanor possession of marijuana, and misdemeanor providing false information to an officer. Defendant appeals his conviction and sentence, arguing that the trial court: (1) failed to suppress physical evidence that was the fruit of an illegal interrogation; (2) allowed prejudicial testimony concerning defendant's possession of contraband while at the police station for questioning; (3) considered impermissible information in sentencing defendant; and (4) imposed a fixed term of imprisonment for the cocaine possession charge in violation of 13 V.S.A. § 7031(a). We affirm the judgment of conviction on all three charges, reverse the sentence for cocaine possession, and remand for resentencing on this charge.

¶ 2. On July 13, 2007, police responded to a report of a person screaming in the South Main Street area of Brattleboro, Vermont. An officer was dispatched to the scene where he encountered three people outside on the street. The officer approached and asked the individuals whether they were responsible for the noise, to which they responded affirmatively. The officer then asked them to identify themselves. Defendant gave the officer a fake name; the fake name he used, however, was that of an individual who had an extraditable warrant from Florida. The officer informed defendant of the warrant and defendant responded that he had never been to Florida.

¶ 3. As the police dispatch was confirming the warrant information, defendant dropped a dollar bill on the ground directly in front of the officer. The dollar bill was folded into a small pouch, and the officer testified that based on his training and experience, he immediately recognized the pouch as a device used to carry illegal drugs. Defendant put his foot over the bill and then quickly picked it up and placed it in his pocket. After defendant picked up the bill, the officer asked defendant if he could see it. Defendant handed the pouch to the officer. Before the officer opened the pouch, he asked defendant what was inside it, to which defendant responded that it was "a little bit for play." The officer then opened the pouch and found a white powdery substance later identified as cocaine. The officer again asked defendant what was inside the pouch, and defendant responded that it was "coke."

¶ 4. The officer subsequently arrested defendant, handcuffed him, and proceeded to search him incident to the arrest. The officer found two small bags in defendant's pocket, one containing cocaine and the other containing marijuana. In another pocket, the officer found a wooden box containing more marijuana and a bag of six Seroquel tablets. Finally, the officer felt another object located in defendant's underwear. When questioned about this object, defendant responded that it was "a little more coke."

¶ 5. After searching defendant, the officer transported him to the Brattleboro police station, where he was asked processing questions, but was not questioned further about the incident. Defendant's real identity was subsequently confirmed. While at the station, the officer asked defendant to remove the cocaine from his underpants. He did so, placed the package on a desk, then grabbed the package and ripped it open, spewing cocaine all over the room. Defendant was restrained, handcuffed, and placed in a cell.

¶ 6. Defendant was charged with felony possession of cocaine in violation of 18 V.S.A. § 4231(a)(2), misdemeanor possession of marijuana in violation of 18 V.S.A. § 4230(a)(1), and misdemeanor providing false information to a police officer in violation of 13 V.S.A. § 1754(a).

¶ 7. Defendant moved to suppress all of the evidence gathered and statements made over the course of the encounter, arguing that he was in police custody at the time the officer asked him to hand over the dollar bill drug pouch. Because the officer had not apprised defendant of his *Miranda* rights prior to inspecting the contents of the pouch, defendant claimed that the cocaine and all subsequent evidence gathered were the products of an illegal search. The trial court granted in part and denied in part defendant's motion. The court concluded that once the officer learned that defendant had an extraditable warrant from Florida and relayed this information to defendant, defendant was not free to leave and was in custody. Because defendant was not apprised of his *Miranda* rights at this time, the trial court suppressed all of defendant's unwarned statements, including: defendant's first response to what was in the pouch ("a little bit for play"); defendant's second statement after the officer had opened the pouch and observed its contents (that the pouch contained "coke"); and defendant's third statement as to what the bulge was in his pants ("a little more coke").

¶ 8. The court, however, denied defendant's motion to suppress the physical evidence discovered over the course of the encounter, evidence that included the cocaine found in the dollar bill drug pouch and the cocaine and marijuana found on defendant's person. The court concluded that at the time the dollar bill drug pouch fell onto the ground it was in plain view, and the officer's training and experience gave him reason to believe it contained illegal drugs and probable cause to seize and open it. The court also found that the officer had reason to ask defendant to show him the bill and that by giving the officer the bill defendant consented to its search. The court concluded that once the officer discovered the cocaine in the pouch, he had probable cause to arrest defendant, and the subsequent marijuana and cocaine were discovered as part of a permissible search incident to arrest.

¶ 9. During trial, the State presented evidence that defendant had a handcuff key secreted in his shoe while in the Brattleboro police station. Defendant objected, arguing that this evidence was

irrelevant and prejudicial, but the court overruled the objection. Following a two-day trial, defendant was convicted on all three counts and was subsequently sentenced to four years and eleven months to five years for the cocaine possession charge, "all suspended but five years," and concurrent sentences of five-to-six months for the marijuana possession charge and eleven-to-twelve months for the false information charge.

¶ 10. On appeal, defendant contends that the trial court: (1) erred in failing to grant his suppression motion with regard to the physical evidence seized; (2) erred in allowing testimony as to defendant's possession of a handcuff key; (3) relied on impermissible information in imposing a sentence; and (4) imposed a sentence for a fixed term in violation of 13 V.S.A. § 7031(a). We address each argument in turn.

## I.

¶ 11. Defendant's primary argument with regard to the motion to suppress is that the officer engaged in a custodial interrogation, but failed to give defendant the required warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that the arrest and subsequent search incident to that arrest were all the result of the unwarned interrogation. Defendant asserts that the officer thus violated his rights to be free from self-incrimination and unlawful search and seizure under both the Vermont and Federal Constitutions. The State argues, and we agree, that even conceding that defendant was in custody at the time of the search, the physical evidence obtained was justified on grounds other than the unwarned statements, including the fact that defendant dropped the pouch of cocaine in plain view of the officer. This gave the officer probable cause to seize the pouch, arrest defendant, and search defendant incident to that lawful arrest.

¶ 12. A motion to suppress presents a mixed question of fact and law. *State v. Fleurie*, 2008 VT 118, ¶ 10, 185 Vt. 29, 968 A.2d 326. In reviewing the trial court's decision on a motion to suppress, we review the court's legal conclusions de novo and its findings of fact under a clearly erroneous standard. *State v. Pontbriand*, 2005 VT 20, ¶ 12, 178 Vt. 120, 878 A.2d 227; *Fleurie*, 2008 VT 118, ¶ 10 ("While we uphold the trial court's factual findings absent clear error, we review the trial court's conclusions of law de novo." (quotation omitted)).

■ ¶ 13. Once a suspect is in custody, he is entitled to *Miranda* warnings. *State v. Garbutt*, 173 Vt. 277, 282, 790 A.2d 444, 448 (2001). Here, the trial court found that defendant was in custody as soon as the officer told him of the potential warrant for his arrest. All statements made by defendant as a product of this custodial interrogation were, therefore, correctly suppressed. Defendant argues, however, that the trial court erred in denying his motion to suppress the physical evidence, in the form of cocaine and marijuana, found over the course of the entire encounter because seizure of this evidence amounted to tainted "fruit" of the initial illegality. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). We disagree.

■ ¶ 14. The question here turns on whether the discovery of the cocaine and marijuana were the result of defendant's unwarned statements or whether there was an independent basis justifying the searches. The United States Supreme Court has held that a police officer's failure to give a *Miranda* warning does not mandate the suppression of the physical fruits of the suspect's unwarned but voluntary statements. *United States v. Patane*, 542 U.S. 630, 636-37 (2004). In *State v. Peterson*, however, we diverged from the United States Supreme Court and held that the scope of the remedy for a *Miranda* violation is greater under Article 10 of the Vermont Constitution than under the Fifth Amendment. 2007 VT 24, ¶ 18, 181 Vt. 436, 923 A.2d 585. Thus, we held that physical evidence obtained as a result of statements made in contravention of *Miranda* is excludable under Article 10 of the Vermont Constitution. *Id.* ¶ 28.

¶ 15. Simply citing *Peterson*, however, without demonstrating a connection between the constitutional violation and the physical evidence seized, does not justify application of the exclusionary rule as the appropriate remedy. See *State v. Phillips*, 140 Vt. 210, 218, 436 A.2d 746, 751 (1981) (noting that inquiry must be "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (quotation omitted)); see also *United States v. Ramirez*, 523 U.S. 65, 72 n.3 (1998) (application of the exclusionary rule depends on the existence of a "sufficient causal relationship" between the unlawful conduct and the discovery of the evidence). Thus, the exclusionary rule prohibits the introduction of evidence directly resulting from

unconstitutional conduct, but does not apply to evidence that is obtained through an independent source or that would have been inevitably discovered. See *State v. Dupaw*, 134 Vt. 451, 453, 365 A.2d 967, 968 (1976) (noting that in deciding whether to apply the exclusionary rule, the question is whether the challenged evidence was discovered through exploitation of an illegality); *Nix v. Williams*, 467 U.S. 431, 444 (1984) (concluding that in situations where "the information ultimately or inevitably would have been discovered by lawful means," the exclusionary rule does not apply).

¶ 16. We agree with the trial court that defendant's answers to the officer's question of what was in the pouch — "a little bit for play" and "coke" — were the product of an unwarned interrogation and must be suppressed. We also agree that these statements were of no moment because the officer had probable cause to seize and inspect the pouch.

¶ 17. The State argues that the distinct characteristics of the pouch, which was dropped by defendant in plain view of the arresting officer, made its incriminating nature immediately apparent to the officer, thus justifying the pouch's seizure. We have held that two elements must be met to justify this sort of warrantless seizure: first, the police must have had probable cause to believe that the pouch contained incriminating evidence; and second, "there had to have been some exigent circumstance of sufficient weight to justify immediate seizure without resort to a warrant." *State v. Badger*, 141 Vt. 430, 446, 450 A.2d 336, 345 (1982).

¶ 18. Our inquiry turns on whether the unique features of the dollar bill pouch, which was dropped in plain view of the officer, made its illicit contents immediately recognizable, providing probable cause for its seizure. See *In re C.C.*, 2009 VT 108, ¶ 11, 186 Vt. 474, 987 A.2d 1000 ("For probable cause to exist, a reasonable officer must have been able to perceive the contraband or evidentiary nature of the object before its seizure."). We note that "[p]robable cause is a flexible, common-sense standard . . . requir[ing] that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *State v. Trudeau*, 165 Vt. 355, 359, 683 A.2d 725, 728 (1996) (quotations omitted).

■ ¶ 19. With these standards in mind, we turn to whether the characteristics and outward appearance of a folded-paper pouch telegraphed the contraband contained inside, justifying its seizure. We note that state and federal courts alike have agreed that because the use of such paper bindles to conceal narcotics is incredibly common and well-known to law enforcement officers, observation of these bindles is enough to justify their seizure. See *Texas v. Brown*, 460 U.S. 730, 750-51 (1983) (Stevens, J., concurring) (noting that a balloon full of an illicit substance "could be one of those rare single-purpose containers which by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance" (quotation omitted)); *Ambrose v. State*, 221 P.3d 364, 366-67 (Alaska Ct. App. 2009) (upholding search of cocaine bindle discovered during legal pat-down incident to arrest based on principle that "an officer may open a package in plain view if it is immediately apparent that the package is a single-purpose container used to carry illegal drugs"); *People v. Mascarenas*, 972 P.2d 717, 722 (Colo. App. 1998) (concluding that probable cause existed for officer to seize "bindle" of cocaine when officer's training and experience indicated that such a bindle was commonly used to conceal narcotics); *People v. Germany*, 599 N.Y.S.2d 416, 417-18 (Sup. Ct. 1993) (denying a defendant's motion to suppress and finding that officer had probable cause to seize three "tightly wrapped newspaper objects" based on officer's trained expertise in narcotics arrests involving decks of heroin "similarly packaged in tightly wrapped newspaper coverings"); *State v. Cornwall*, 810 P.2d 484, 488 (Utah Ct. App. 1991) (reversing suppression of evidence where officer observed a paper bindle in plain view and officer's training and experience indicated that "small, tightly shut paper packets are commonly used as containers for cocaine"); *State v. Courcy*, 739 P.2d 98, 100 (Wash. Ct. App. 1987) (affirming denial of defendant's motion to suppress and recognizing officer had probable cause to seize a paper bindle containing cocaine when bindle was in plain view, officer testified he immediately recognized container as cocaine bindle and defendant attempted to hide bindle).

■ ¶ 20. Here, the distinctive characteristics of the dollar bill pouch combined with the officer's testimony that, based on his training and experience, such a container is commonly used to carry drugs, provided the officer with probable cause to believe a

crime was afoot and to seize the pouch. We note that our decision today is consistent with our recent opinion in *In re C.C.*, where we held that simply feeling a plastic baggie during the course of a legal pat-down did not provide an officer with the requisite probable cause to seize the baggie. 2009 VT 108, ¶ 15. In *In re C.C.*, we concluded that "mere possession of a plastic bag in a pocket is [not] sufficiently incriminating to render it immediately apparent that the contents of that bag are contraband." *Id.* ¶ 12. The facts before us now differ markedly from those in *In re C.C.*, primarily because what may be observed based on an officer's "tactile perception" over the course of a blind pat-down search is distinct from what may be observed when a pouch immediately recognized as contraband is dropped directly in front of an officer.

¶ 21. Finally, the seizure of the pouch here meets the exigent circumstances exception to the warrant requirement because if the officer had attempted to secure a warrant, there was a substantial likelihood that the evidence would have disappeared. See *State v. Rocheleau*, 142 Vt. 61, 65-66, 451 A.2d 1144, 1147 (1982) (concluding that seizure of marijuana fell within the exigent circumstances exception to warrant requirement when delaying seizure to wait for warrant would have likely resulted in destruction of evidence); *Badger*, 141 Vt. at 445-46, 450 A.2d at 345-46.

¶ 22. Having concluded that the pouch was legally seized, we must determine whether opening the pouch was an unreasonable search. We have held that Article 11 of the Vermont Constitution protects the people of the state "from unreasonable, warrantless governmental intrusion into affairs which they choose to keep private." *State v. Zaccaro*, 154 Vt. 83, 91, 574 A.2d 1256, 1261 (1990). We note that this Court has a well-developed Article 11 jurisprudence independent of the Federal Constitution, particularly with regard to warrantless searches of closed containers. See *State v. Neil*, 2008 VT 79, ¶ 10, 184 Vt. 243, 958 A.2d 1173 ("Our divergence from federal precedent governing warrantless searches of closed containers is well-settled."). Our inquiry turns on whether a reasonable expectation of privacy is implicated; if it is, "the State has the burden of showing that the circumstances of defendant's arrest justified a warrantless search." *Id.* ¶ 12; see also *State v. Kirchoff*, 156 Vt. 1, 13, 587 A.2d 988, 996 (1991) ("[W]e differ from federal doctrine by placing on the State the burden to prove that a warrantless search of open fields is not prohibited under [Article 11].").

■ ¶ 23. Here, we conclude that the threshold determination of whether a reasonable expectation of privacy is implicated is not met. "Article 11 does not protect areas willingly exposed to the public, but instead requires an 'objective' inquiry into whether a reasonable person would know that someone placing articles as defendant did intended to exclude them from public view." *State v. Savva*, 159 Vt. 75, 89, 616 A.2d 774, 782 (1991) (citation omitted). Though in *Savva* we ultimately determined that the defendant had a reasonable expectation of privacy in a bag he clearly meant to conceal from public view, we noted that "if a container discloses its contents either because it is open ('plain view') or its configuration gives away what is inside (e.g., a pistol in a holster), Article 11's requirement for an expectation of privacy may not be met." *Id.* at 90, 616 A.2d at 782; see also *Courcy*, 739 P.2d at 101 (concluding that "because it was immediately apparent to the experienced officers the bindle contained contraband, [the defendant] did not have a reasonable expectation of privacy which would prevent opening the bindle or field testing it").

■ ¶ 24. Here, the officer had reason to approach defendant and the two other individuals with defendant as part of his lawful investigation of a noise complaint in the area, a noise complaint for which defendant and his two companions said they were responsible. See *State v. Gray*, 150 Vt. 184, 191, 552 A.2d 1190, 1195 (1988). Once at the scene, defendant dropped the bindle at the officer's feet, thus placing the bindle in the officer's plain view. The dollar bill was folded in such a distinctive way that it essentially "proclaim[ed] its contents unambiguously" to the officer, justifying not only its seizure, but the officer's subsequent inspection of its contents. See *United States v. Cardona-Rivera*, 904 F.2d 1149, 1155 (7th Cir. 1990) (opining that such objects "taken together with the circumstances in which it is seized" obviate the need for a warrant).

■ ■ ¶ 25. We note that such a holding is consistent with the fundamental principles of our search and seizure jurisprudence, principles which seek to balance the legitimate goals of law enforcement with the right of citizens to be protected from government intrusion. Where incriminating evidence is literally dropped in front of a police officer who is lawfully carrying out his duties and where the incriminating nature of the evidence is immediately apparent, there is no intrusion into a constitutionally

protected area that would preclude seizure of that evidence. Thus, we conclude that a seizure in this circumstance is justified under Article 11 of the Vermont Constitution and under the Fourth Amendment. See *State v. Cunningham*, 2008 VT 43, ¶ 16, 183 Vt. 401, 954 A.2d 1290 ("We have consistently held that Article 11 provides greater protections than its federal analog, the Fourth Amendment . . . ."); see also *Brown*, 460 U.S. at 740.

¶ 26. Having determined that the officer's seizure and inspection of the drug pouch was legal, we look to whether the completion of each sequential step of the investigation justified further restrictions on defendant's liberty, ultimately providing probable cause for his arrest. See *Cunningham*, 2008 VT 43, ¶ 15; *State v. Greenslit*, 151 Vt. 225, 228, 559 A.2d 672, 674 (1989) (noting that probable cause exists "where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a person of reasonable caution to believe that a crime is being committed"). Here, the officer's lawful discovery of the cocaine in the pouch, combined with defendant's suspicious attempts to conceal the pouch with his foot, were in turn enough to give the officer probable cause to arrest defendant for drug possession and thus justified the subsequent search of defendant's person incident to arrest. See *State v. Guzman*, 2008 VT 116, ¶ 11, 184 Vt. 518, 965 A.2d 544 (noting that an officer "may permissibly search a suspect when the search is incident to an arrest supported by probable cause"). Because the pat-down of defendant did not extend beyond a reasonable search incident to arrest, the additional evidence found on defendant's person — cocaine and marijuana — was properly seized and introduced into evidence.

¶ 27. Defendant's argument, therefore, is based on the faulty premise that it was his statement that the pouch contained "a little bit for play" that gave the officer probable cause to open the pouch. This is not so. Given the independent basis for the seizure and search of the drug pouch, the fact that defendant told the officer what he was about to discover was of no moment. See *State v. O'Neal*, 921 A.2d 1079, 1088 (N.J. 2007) (concluding that defendant's unwarned answer to officer's question of what was in his sock had no bearing on legality of subsequent seizure of cocaine that was in his sock because at time cocaine was seized, officer had probable cause to arrest defendant for drug transac-

tion). Defendant's reliance on *Peterson* is thus misplaced. In *Peterson*, we addressed a situation in which following suspect's arrest, officers, without providing the suspect with a *Miranda* warning, continued questioning him, eventually eliciting the suspect's admission to growing marijuana plants in his home. Because it was undisputed that the marijuana plants in that case were a fruit of the unwarned interrogation, we found that the trial court erred in failing to suppress them. 2007 VT 24, ¶ 28. Unlike the situation in *Peterson*, here, there was an independent basis for the officer's search. Indeed, had defendant said nothing, the officer would still have been justified in seizing the pouch and inspecting it, thus giving the officer probable cause to arrest and search defendant.[1]

## II.

¶ 28. Defendant next contends that the trial court erred by allowing the State to introduce evidence that was both irrelevant and prejudicial when it denied defendant's motion to exclude testimony that officers had found a handcuff key inside of defendant's shoe. The trial court denied the motion, finding that the testimony was "relevant to the false information to a police officer . . . because one of the elements the State needs to prove for the false information count is that [defendant] intended, when he gave the false name, to divert an investigation from himself." The court also concluded that defendant's possession of the key was relevant to a showing of the intent element of the two drug possession charges because it showed that defendant knew his behavior was unlawful. In weighing the probative value of the evidence against its prejudicial effects, the court concluded that "it is prejudicial, obviously, but so is most evidence that the State intends to offer," and that in this case, the probative value was not outweighed by any danger of unfair prejudice. At the close of the evidence, the trial court denied defendant's request for a limiting instruction that the handcuff key was not evidence of possession of drugs or false information to a police officer.

¶ 29. A trial court is charged with determining first whether offered evidence is relevant. See V.R.E. 402. Even if

---

[1] The State also argues that defendant consented to the search of the pouch. Because we conclude that the officer had probable cause to open the pouch even absent defendant's consent, we do not reach this issue.

relevant, a court must nonetheless exclude evidence if the probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403. We apply a deferential standard of review to the trial court's evidentiary rulings, and we will reverse the trial court's decision "only when there has been an abuse of discretion that resulted in prejudice." *State v. Desautels*, 2006 VT 84, ¶ 12, 180 Vt. 189, 908 A.2d 463; accord *State v. Ogden*, 161 Vt. 336, 341, 640 A.2d 6, 10 (1993). Moreover, we have held that Rule 403 rulings in particular are "highly discretionary," because of the requirement that "the danger of unfair prejudice must *substantially outweigh* the probative value of the evidence." *State v. Lee*, 2005 VT 99, ¶ 11, 178 Vt. 420, 886 A.2d 378 (quotation omitted).

■■ ¶ 30. Here, the false information charge requires proof that a person knowingly gave false information to a law enforcement officer "to deflect an investigation from the person." 13 V.S.A. § 1754(a). Possession of a means to escape arrest may be an indication that a defendant had a plan to deflect investigation, a plan that included fleeing possible prosecution. With regard to drug possession charges, the State had to prove that defendant "knowingly and unlawfully" possessed illegal substances. 18 V.S.A. § 4230; *id.* § 4231. Because intent must be inferred from a person's acts and proved by circumstantial evidence, possession of a handcuff key triggers a reasonable inference that defendant knew his behavior was illegal and had taken steps to avoid prosecution and punishment. See *State v. Cole*, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988) ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence."). The trial court allowed use of the evidence in this way and we discern no abuse of discretion.

■ ¶ 31. The trial court also acted within its discretion in refusing to give the limiting instruction that defendant requested. Defendant sought an instruction that testimony regarding the handcuff key was "not evidence of possession of drugs or false information to a police officer." The court refused to issue such an instruction because it concluded that the evidence was relevant to the intent element present in all three charges and thus it was "not a correct statement of law to say that it's not relevant to

possession." We have already concluded that the trial court did not abuse its discretion in admitting evidence that defendant possessed a handcuff key as evidence that defendant "knowingly" possessed cocaine and marijuana, and we see no error in the trial court's refusal to essentially reverse this earlier decision by issuing such a broad limiting instruction. See *State v. Synnott*, 2005 VT 19, ¶ 17, 178 Vt. 66, 872 A.2d 874 (concluding that trial court acted within its discretion in denying defendant's request for broad limiting instruction, which would have prevented jury from considering certain evidence as proof that defendant engaged in particular criminal act because trial court had admitted same evidence for broader purpose).

### III.

¶ 32. Next, defendant argues that the trial court considered information beyond the record and not established by a preponderance of the evidence in fashioning a sentence and impermissibly used her prior experience as a prosecutor to infer that defendant had engaged in selling illegal drugs. We disagree.

¶ 33. In reviewing a sentence imposed by the trial court, "we defer to the lower court and will not review sentences within the statutory limits absent exceptional circumstances." *State v. Cyr*, 141 Vt. 355, 358, 449 A.2d 926, 927 (1982). "Sentences are imposed with regard to the situation and nature of the offender as well as according to the crime charged." *Id.*; see V.R.Cr.P. 32(c)(2) (authorizing preparation of presentence investigation report containing wide range of information, including "any prior criminal record of the defendant and such information on his characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence . . . and such other information as may be required by the court").

¶ 34. A sentencing judge necessarily has broad discretion over what information may be considered in fashioning a just and fair sentence and considers a wide range of factors, including the "propensity and nature of the offender, the particular acts by which the crime was committed, and the circumstances of the offense." *State v. Bushway*, 146 Vt. 405, 407, 505 A.2d 660, 661 (1985); see also *Williams v. New York*, 337 U.S. 241, 247 (1949) (concluding that sentencing judge must have "the fullest information possible concerning the defendant's life and characteristics").

We have thus "relaxed the scrutiny ordinarily paid to the adequacy of findings" in sentence considerations. *State v. Derouchie*, 157 Vt. 573, 578, 600 A.2d 1323, 1326 (1991) (finding it was not clearly erroneous for trial court to conclude that defendant's acknowledgment of guilt was insincere during sentence reconsideration proceeding). Moreover, when "mere assertions of criminal activities are in fact supported by factual information, then the evidence should be considered by the sentencing court, after timely disclosure and an opportunity to rebut." *State v. Ramsay*, 146 Vt. 70, 81, 499 A.2d 15, 22 (1985) (quotation and emphasis omitted). Finally, on appeal, the defendant bears the burden to show that materially inaccurate information was relied upon by the sentencing court. *Id.* at 79, 499 A.2d at 21.

¶ 35. We turn to the relevant portions of the sentencing hearing. The sentencing judge apparently considered a variety of factors in her sentencing decision, including defendant's completion of numerous certificate programs. Weighing against his certificate completion, however, was defendant's prior history of drug possession convictions, the circumstances of the present charges, and his uncooperative behavior at the police station. In response to defendant's claim that despite his history, "it's not always necessarily true [that] how a person perceives you is what you really are," the sentencing judge responded:

> Okay. I guess I have some training that some people don't have, in how to perceive people who are involved with selling narcotics. In a former career, I was a drug prosecutor. And, have attended numerous trainings, and held numerous, or dealt with, numerous cases about the ability to distinguish someone who's in possession of controlled substances for their own purposes or for purposes of sale.

> And you're not charged with sale in this case. But, it is something that, the Court can consider, and based on my experience, I would find at this point that, you were engaged in selling. I'm not saying there's been any evidence presented that you were actually involved in a sale. But, to possess two, excuse me, to possess an ounce of cocaine, have more than $1,500 on your person . . . have a knife on your person, a cell phone, and to give a false name when the police ask you what your name is

are all indications, in my experience, of someone who's been engaged, and is engaged, in selling drugs. And the best indicator of that is that you've been convicted of that in the past, conspiracy to sell drugs. And, prior behavior is indicative of future behavior. So, all this evidence leads me to believe that you weren't here, in possession of cocaine, for your own personal use, but that you had intended to sell that.

And that was your purpose in being here. I would add the fact that you had a handcuff key on your person as evidence of your inclination to use it . . . .

The court acknowledged defendant's participation in some rehabilitative programming, but when weighed against the circumstances of the present offenses and defendant's history, the court noted that:

[Y]ou've been in a lot of trouble there, being involved in disciplinary reports, and even major infractions for fighting behavior and disruptive behavior. So that, in my opinion, kind of negates the good work that you've done there.

Based on this information, the trial court concluded:

I feel that rehabilitation is not a goal here. You know, you've got . . . four previous convictions of felonies, three of them, drug-related, and you've served, according to [your attorney] three years in jail. The PSI says ten, . . . . [T]he point is that . . . we discipline our children the same way. You start with a warning, and then you start with a time out, and then you start with some time in the bedroom.

And then, it gets worse. And here, you've served fifty-seven months and a year in jail and then been sentenced to five years to ten years in jail. And, that didn't really do much. And so, I'm a firm believer in not going backwards, but going forward. And, you know the sentences get more intense, as time goes by and as further convictions happen. I don't see any reason but to give you the maximum sentence that the court can give you here.

¶ 36. The above transcript excerpts indicate that the court weighed defendant's drug-related history as well as the circumstances surrounding the present offense, including defendant's possession of an ounce of cocaine, $1,500, a cell phone, and a handcuff key, coupled with his lies about his identity. The court also weighed the mitigating evidence of defendant's participation in some rehabilitative programming, but ultimately found that these program certificates were not enough to overcome the overwhelming evidence indicating rehabilitation was not a reasonable goal of sentencing. These facts are within the boundaries of V.R.Cr.P. 32 and the broad discretion afforded to the sentencing court in devising a fair sentence. With regard to the court's inference that defendant was engaged in selling drugs, we conclude that this inference was relevant to sentencing because it shed light on the nature of the crime and defendant's proclivities. See *State v. Thompson*, 150 Vt. 640, 645, 556 A.2d 95, 99 (1989) (concluding sentencing court's finding that defendant used force when he sexually assaulted victim, despite fact that use of force was not element of crime for which defendant was convicted, was "relevant to sentencing because it shed light on the nature of the assault and defendant's proclivities, and therefore assisted the judge in determining an appropriate sentence").

¶ 37. Finally, defendant's argument that the sentencing judge improperly relied on her prior experience as a prosecutor also fails. We cannot conclude that it was error for the sentencing judge here to reference her experience in drug-related criminal proceedings as an aid to her analysis of the unchallenged facts before her. Indeed, a contrary rule would require judges to make decisions in a vacuum, a situation that is neither possible nor particularly useful. See *Barclay v. Florida*, 463 U.S. 939, 948-50 (1983) (rejecting defendant's claim that sentencing judge improperly relied on his own experiences with Nazi concentration camps in imposing sentence and concluding that "[i]t is neither possible nor desirable for a person to whom the State entrusts an important judgment to decide in a vacuum, as if he had no experiences"); *Simonson v. Hepp*, 549 F.3d 1101, 1107-08 (7th Cir. 2008) (rejecting defendant's claim that sentencing judge improperly considered his own experience regarding recidivism rates in sentencing because defendant failed to prove that this finding was inaccurate).

## IV.

¶ 38. Defendant's final argument concerns the sentence imposed for the cocaine possession charge, a sentence which imposed a minimum term of four years and eleven months and a maximum term of five years. Defendant argues that this sentence violated 13 V.S.A. § 7031(a) by imposing a fixed term.[2] We agree.

¶ 39. Though we generally defer to the sentencing court absent exceptional circumstances, we will engage in a de novo review of whether a sentence conforms to our indeterminate sentence law. See *State v. Pollander*, 167 Vt. 301, 304, 706 A.2d 1359, 1360 (1997) (noting that we review a trial court's decision regarding questions of law de novo). In construing statutes, this Court looks first to the language of the statute to determine whether the meaning is plain. *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999). If we must go beyond the words of the statute to ascertain legislative intent, we look to the statute's "subject matter, its effects and consequences, and the reason and spirit of the law" for meaning. *State v. Thompson*, 174 Vt. 172, 175, 807 A.2d 454, 458 (2002).

¶ 40. With these principles in mind, we turn to Vermont's sentencing law. Under 13 V.S.A. § 7031(a), the trial court must establish a maximum sentence in accordance with the maximum term fixed by law for the offense and may establish a minimum sentence not less than the shortest term fixed by law for the offense. In addition, the statute provides that "the court imposing the sentence shall not fix the term of imprisonment." *Id.* In adopting this proscription on determinate sentences, the Legislature has indicated its intent to transfer some sentencing discretion from the courts to the State's parole authority. The parole board is granted authority to undertake an individualized assessment and considers factors, such as a defendant's individual character-

---

[2] In his dissent, Justice Burgess contends that defendant has conceded that the underlying four year and eleven month to five year sentence is lawful. *Post*, ¶ 51. This is simply a mischaracterization of defendant's brief. The paragraph to which the dissent refers takes issue with the trial court's added (and concededly superfluous) language that all of the sentence was suspended "but five years." That this language is unnecessary is not in dispute by the parties. Indeed, striking this language does not affect the sentence. In focusing on this paragraph, however, Justice Burgess ignores the thrust of defendant's argument with regard to his sentence, which is that the trial court "cannot impose a minimum and maximum sentence that are of identical length."

istics and culpability, in deciding whether to terminate a sentence after the minimum term has been served. See 28 V.S.A. § 501 (providing that inmate is eligible for parole subject to any minimum sentence imposed); *id.* § 502(a) (providing that parole board shall interview inmates eligible for parole, considering "all pertinent information regarding an inmate" to determine whether to grant parole).

¶ 41. An indeterminate sentencing law thus allows a parole authority the necessary discretion to release an offender who has rehabilitated himself, giving an offender an incentive to avail himself of rehabilitative programs. See 28 V.S.A. § 1(a) (providing that department of corrections "shall have the purpose of developing and administering a correctional program designed to . . . render treatment to offenders with the goal of achieving their successful return and participation as citizens of the state and community, to foster their human dignity and to preserve the human resources of the community"); *People v. West*, 82 Cal. Rptr. 2d 549, 554 (Ct. App. 1999) ("[T]he purpose of the indeterminate sentence law . . . is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime." (quotation omitted)); *State v. Peckenschneider*, 236 N.W.2d 344, 351 (Iowa 1975) (McCormick, J., dissenting) ("The indeterminate sentence law was born in the concept that the main purpose of a criminal sentence is rehabilitation of the offender, and it is intended that a parole board determine whether or not the felon must serve the maximum number of years or whether he has been cured and ready to return to society." (quotation omitted)).

¶ 42. In keeping with the legislative purpose behind indeterminate sentencing schemes, we have construed 13 V.S.A. § 7031(a) as prohibiting a court from imposing a definite term of incarceration through identical minimum and maximum sentences. See *State v. Lambert*, 2003 VT 28, ¶¶ 17-18, 175 Vt. 275, 830 A.2d 9. In *Lambert*, we reversed a sentence where the sentencing court "specifically attempted to establish a minimum equal to the maximum term" by imposing a sentence of not less than twenty-four months or more than two years. *Id.* ¶ 18; see also *State v. Bruley*, 129 Vt. 124, 130, 274 A.2d 467, 471 (1970) (reversing sentence of "not more or less than nine months" (quotation marks omitted)).

 ¶ 43. We have also held, however, that slight differences between minimum and maximum sentences do not amount to a fixed sentence. See *State v. Kimmick*, 2007 VT 45, ¶ 11, 181 Vt. 635, 928 A.2d 489 (mem.). In *Kimmick*, we upheld a sentence with a minimum of fourteen years and a maximum of fifteen years, concluding that "even though the difference between the maximum and minimum terms is slight, the terms are not identical." *Id.* ¶ 14; see also *State v. Stanley*, 2007 VT 64, ¶ 13, 182 Vt. 565, 933 A.2d 184 (mem.) (affirming sentence with minimum term of eight years and maximum term of nine years); *Bushway*, 146 Vt. at 408, 505 A.2d at 662 (affirming sentence with maximum of twenty years and minimum of eighteen years).

 ¶ 44. The cases cited above have all involved intervals between the minimum and maximum terms that forward the goals behind the indeterminate sentence law by allowing the offender at least the chance to take advantage of the possibility of parole. By contrast, the sentence before us — which provides an interval of a mere thirty days — closes the window in which the parole board can exercise its discretion, essentially thwarting the rehabilitative purpose behind both the indeterminate sentence law and our laws governing parole. The sentencing court here saw no rehabilitative purpose to be served, so the sentence makes sense in that context; however, the same logic behind our invalidation of identical minimum and maximum terms necessitates a similar proscription against any sentence where the interval between the minimum and maximum terms is so small as to effectively amount to a circumvention of the indeterminate sentence law.

¶ 45. The Michigan Supreme Court addressed a strikingly similar set of facts in its review of an appeal of a sentence under that state's indeterminate sentencing law in *People v. Tanner*, and we find its analysis particularly useful. 199 N.W.2d 202 (Mich. 1972). In that case, the defendant appealed his sentence of a minimum term of fourteen years and eleven months and a maximum term of fifteen years, arguing that the short interval between the minimum and maximum terms amounted to a fixed sentence in violation of Michigan's indeterminate sentence law. The court recognized "that though technically providing some period, though brief, within which the correction authorities may exercise the discretion vested in them by the legislature, such sentences fail to comply with the clear intent and purpose of the indeterminate sentence act." *Id.* at 204; see also *People v.*

*Howland*, 276 N.E.2d 818, 820 (Ill. App. Ct. 1971) (affirming trial court's refusal to consider recommendation from state's attorney for sentence of one year to one year and a day because such sentence "violated the spirit and purpose of the indeterminate sentence law").

¶ 46. Here, where the difference between the minimum and maximum terms — amounting to a minimum term that is over 98% of the maximum term — is so minimal as to effectively be nonexistent, we cannot see how the legislative intent and purpose behind 13 V.S.A. § 7031(a) is met. We, therefore, vacate the sentence imposed for the possession of cocaine charge and remand to the trial court for a new sentencing hearing on this charge.

*The judgment of conviction on all three charges is affirmed. The sentence for cocaine possession is reversed and the matter is remanded.*

¶ 47. **Dooley, J.,** dissenting in part. Given defendant's failure to challenge the validity of the small difference between his minimum and maximum sentence, I find no reason to address this argument and respectfully dissent from Part IV of the foregoing decision.

¶ 48. On appeal, defendant's sole challenge to his sentence is that in directing that his four-year-and-eleven-month-to-five-year sentence would all be suspended except five years, the court effectively imposed a fixed sentence in violation of 13 V.S.A. § 7031(a). Defendant specifically concedes that the slight difference between his maximum and minimum sentences is in accordance with this Court's precedent and does not violate the statute because of the amount of the difference. The majority does not address the error defendant raises. Instead, the majority reverses on the theory expressly conceded by defendant: that the one-month differential between his minimum and maximum sentences contravenes the indeterminate sentencing law.

¶ 49. "[I]n all but a few exceptional instances, matters which are not briefed will not be considered on appeal." *State v. Settle*, 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982). Certainly, this Court may affirm a trial court decision based on a rationale different from that employed by the parties or the trial court. See *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000) (explaining that this Court may affirm trial court on alternative grounds, even if not raised by parties). We should, however, be much more hesitant to

employ novel theories to reverse the trial court, especially where defendant concedes the issue on appeal. Given the lack of argument and briefing on the validity of a one-month difference between a maximum and minimum sentence, I would decline to address this issue.

¶ 50. **Burgess, J.,** dissenting in part. Certainly defendant's sentence requires clarification. Intentionally or not, the district court misspoke when it imposed a 4-year-and-11-month-to-5-year sentence "all suspended but 5 years" to serve, which would seem to defeat the statutory prohibition on identical minimum and maximum terms. See 13 V.S.A. § 7031(a) (mandating that the court "shall not fix the term of imprisonment, . . . but shall establish a maximum and may establish a minimum term"). The majority, however, reaches beyond any argument offered by defendant to invalidate his minimum term, when that part of his sentence fully comports with the statute and our case law. Because the majority's strained application of § 7031(a) is unnecessary, departs from the statutory language, and is practically unworkable, I respectfully dissent from Part IV of the foregoing decision.

¶ 51. To begin with, defendant concedes that his underlying 4-year-and-11-month-to-5-year sentence is lawful.[3] That is because,

---

[3] Defendant admits in his brief that "under this Court's jurisprudence, a sentence of 4 years 11 months to 5 years to serve . . . would be lawful." The majority imagines this as "simply a mischaracterization of defendant's brief," *ante*, ¶ 38 n.2, but plainly it is not. Defendant's argument consists of but four paragraphs: the first recites § 7031 with a preface and conclusion reiterating, correctly, that this Court has "construed the statute as prohibiting a sentence with the *same* maximum and minimum terms of confinement" (emphasis added; quotations omitted); and the second paragraph acknowledges, correctly, that while "[c]lose minimum and maximum terms have been found proper, when both are within the respective limits of the law," a "minimum sentence *equal* to the maximum" is invalid (emphasis added, quotations omitted). The entire balance of defendant's argument, and concession, is as follows:

> While, under this Court's jurisprudence, *a sentence of 4 years 11 months to 5 years to serve* or a sentence of 4 years 11 months to 5 years all suspended but 4 years 11 months (or any unsuspended portion that was less than 5 years) *would be lawful, imposition of the sentence 4 years 11 months to 5 years, all suspended but 5 years is unlawful because the minimum sentence that [defendant] will necessarily be required to serve, involving no other considerations, is the maximum sentence.*

> Here as in *Lambert*, it was the court's intention to create a sentence where the minimum and maximum were the same. The court imposed

as was expressly recognized by defendant, our precedents interpreting 13 V.S.A. § 7031(a) are clear: "A sentence is not fixed as long as the maximum and minimum terms are not identical." *State v. Kimmick*, 2007 VT 45, ¶ 13, 181 Vt. 635, 928 A.2d 489 (mem.). Defendant's minimum and maximum terms are not identical; they are different. That the difference is slight is of no import. *Id.* ¶ 14; see also *State v. Bushway*, 146 Vt. 405, 408, 505 A.2d 660, 662 (1985) (rejecting a challenge to a 18-to-20-year sentence to serve based on the "slight difference" between the maximum and minimum term, "when both are within the respective limits set by law").

¶ 52. Why the majority pursues an approach not advocated by defendant to reach its result is unclear. Defendant explicitly did not challenge as invalid the one-month difference between his minimum and maximum terms. Defendant agreed the one-month difference was proper as a matter of law, but maintained that the trial court's suspension of all "but five years" to serve effectively rendered the minimum the same as the maximum in violation of the statute. This claim appears to have merit, but rather than address the issue raised by defendant, the majority embarks on an unsolicited attack on a valid underlying minimum sentence through an interpretation of the statute not supported by its terms or by our prior decisions.

¶ 53. Ignoring the language of the statute, the majority invalidates defendant's sentence on a theory that the interval between the minimum and maximum must somehow be long enough to give the parole board "the necessary discretion to release an offender who has rehabilitated himself." *Ante*, ¶ 41. This is just not in the statute. As cited above, the statute directs that the court "not fix the term of imprisonment . . . [but] may establish a minimum term." 13 V.S.A. § 7031(a).

---

a flat sentence which is unlawful. [Defendant's] sentences must be vacated and the matter remanded for new sentencing.

(Emphases added.) What defendant complains about is the court's purported "suspension" of all his sentence — except for the maximum term — that melds the maximum and minimum into the same time to serve, since release could not occur until the maximum is completed. Thus, according to the court's illusory suspension, the minimum is irrelevant because the maximum must be served. Not addressing defendant's point, the majority instead gratuitously reverses the part of the sentence that defendant agrees is valid.

¶ 54. In construing this language, we first consider its plain meaning. *Kimmick*, 2007 VT 45, ¶ 12. Where the meaning is unambiguous, we need not look beyond the statutory language to ascertain the Legislature's intent. *State v. Thompson*, 174 Vt. 172, 174-75, 807 A.2d 454, 458 (2002) ("We will enforce the statute without resorting to statutory construction if the legislative intent is clear from the language."). This Court has already found this section unambiguous in that "§ 7031 clearly mandates that a court may not fix the term of a sentence by imposing minimum and maximum sentences that are the same." *Kimmick*, 2007 VT 45, ¶ 13. Thus, a sentence meets the statutory requirement so long as the minimum and maximum terms are not identical. *Id.*

¶ 55. The majority posits that our past approvals of slight differences in minimum and maximum terms "have all involved intervals between the minimum and maximum terms that forward the goals behind the indeterminate sentence law by allowing the offender at least the chance to take advantage of the possibility of parole." *Ante*, ¶ 44. Characterizing these sentences of 18-to-20 years to serve, *Bushway*, 146 Vt. at 408, 505 A.2d at 662, 8-to-9 years to serve, *State v. Stanley*, 2007 VT 64, ¶ 13, 182 Vt. 565, 933 A.2d 184 (mem.), or 14-to-15 years to serve, *Kimmick*, 2007 VT 45, ¶ 5, as vindicating the rehabilitative opportunities for parole will surely prompt wry smiles within the criminal justice bar. Irony aside, the majority's new standard for setting minimum terms that "forward the goals behind the indeterminate sentence law," *ante*, ¶ 44, cannot be found in the legislation, is amorphous at best, and arrives without any instruction to the trial bench as to its application.

¶ 56. There can be no direction because this new construct defies certain or meaningful measurement. Although it is settled that a minimum term that is one year, or 7%, less than the maximum is acceptable, see *Kimmick*, 2007 VT 45, ¶ 13, today we learn that a minimum term's difference of one month, or roughly 2%, less than the maximum is not acceptable. Picking the correct number between a one and twelve month interval, or between 2% and 7% differential, remains a mystery. Failure by this Court to divine a line to match its reading of the statute invites litigation

and appeals whenever there is a difference between minimum and maximum terms falling within that range.[4]

¶ 57. Despite the trial court's compliance with the statute, the majority reaches beyond the plain meaning to discover a newfound limit on the sentencing court's authority to set a minimum term. Without any such legislative declaration, the majority relates that "the Legislature has indicated its intent to transfer some sentencing discretion from the courts to the State's parole authority." *Ante*, ¶ 40. Based on this perceived intent, defendant's sentence is invalidated because the majority deems, without knowing, that a one-month interval between the minimum and maximum terms is too short to allow the parole board discretion to release the defendant before his maximum term is done. If this construction is correct, the question of whether enough minimum time has passed before parole can be granted must always be left to the parole board, regardless of the minimum term imposed by the sentencing court — a result clearly at odds with our case law and the statute as written.

¶ 58. There is no reason to distinguish this case from *State v. Kimmick*, 2007 VT 45, where this Court rejected an argument that a sentence of 14-to-15 years violated the spirit of 13 V.S.A. § 7031(a) because, after good-time credit was applied, the defendant's effective maximum and minimum sentences were the same. Based on the plain language of the statute, *Kimmick* held that "even though the difference between the maximum and minimum terms is slight, the terms are not identical." *Id.* ¶ 14. We declined to import the effects of the good time rule into § 7031 because there was no "clear legislative intent to impose such a requirement." *Id.* ¶ 15. Exactly the same rationale applies here, and there is no need to import parole administration into the sentencing statute absent any such direction from the Legislature.

¶ 59. Sentencing and parole are separate processes; the first under the discretion of the court and the second controlled by the parole board. *State v. Bensh*, 168 Vt. 607, 607-08, 719 A.2d 1155, 1156 (1998) (mem.) ("Whereas the court imposes sentences within the limits established by the Legislature, parole follows the imposition of sentence and is a purely legislative function."). The

---

[4] Solution of the mystery is further clouded by our affirmance of defendant's concurrent sentences of 5-to-6 months for marijuana possession and 11-to-12 months for false information to a police officer.

board's authority to grant parole is expressly subject to the minimum term set by the court. 28 V.S.A. § 501 (providing that an inmate with a minimum sentence is eligible for parole "after the inmate has served the minimum term of the sentence"). The parole board has discretion in deciding whether to grant parole to an eligible inmate, but nothing in the statute requires the court to promote parole by adhering to unwritten limits on its minimum sentencing authority beyond what the statute commands. Whatever rehabilitative goal the sentencing court may, or may not, consider, see *State v. Corliss*, 168 Vt. 333, 342, 721 A.2d 438, 445 (1998) (listing sentencing factors to include "punishment, deterrence, or rehabilitation"), rehabilitation is not a per se requirement of sentencing.

¶ 60. There is no silent and implied parole-promoting limitation, as the majority would have, on the court's authority to impose a minimum term. Nor should there be since, based on the specifics of their particular crime or their criminal history, some offenders will merit less opportunity for parole compared to others. This reality is accounted for in the Legislature's grant of flexible trial court discretion to set a minimum and maximum term under 13 V.S.A. § 7031(a) within the range of jail time specified for a given offense, and the court's sentence in this case is in accord with the statute. *Bushway*, 146 Vt. at 408, 505 A.2d at 662.

¶ 61. Finally, if such a different policy is to be drawn, it is not for the authorship of the judicial branch. No self-contradiction appears in the statutes to compel judicial revision. Rewriting the statute properly belongs to the Legislature. See *Smith v. Parrott*, 2003 VT 64, ¶ 14, 175 Vt. 375, 833 A.2d 843 (holding that policy questions are better suited to legislative process). Because we need not abandon the statute as written and need not impose extra-legislative limitations on sentencing discretion, I dissent from the majority's decision to do so.

## On Motion for Reargument

¶ 62. **Skoglund, J.** The State moved for reargument on the question of whether defendant's sentence violated the indeterminate sentencing statute, raising three grounds: (1) defendant may be eligible for release more than a year before he reaches his minimum sentence if he complies with the "plan preparing [him] for return to the community" adopted pursuant to 28 V.S.A. § 1(b); (2) the Legislature has not always required meaningful parole

eligibility, and, thus, it is not clear that such meaningful eligibility is required under the indeterminate sentencing statute; and (3) our opinion may have significant consequences for the criminal justice system that have not been addressed. We granted supplemental briefing and reargument. We now reaffirm our decision and again conclude that the sentence imposed violates the indeterminate sentencing statute.

¶ 63. The trial court sentenced defendant to a minimum term of four years and eleven months and a maximum term of five years on the cocaine possession charge. In concluding that this sentence violated the indeterminate sentencing statute, we looked at all the statutes governing Vermont's sentencing laws to ascertain the legislative intent. Statutes in pari materia — those dealing with the same general subject matter or having the same general purpose — must be read together and construed as parts of a unified statutory system. *See Rutz v. Essex Junction Prudential Comm.*, 142 Vt. 400, 405, 457 A.2d 1368, 1370 (1983).

¶ 64. Under 13 V.S.A. § 7031(a), the trial court is to establish a maximum sentence in accordance with the maximum term fixed by law for the offense and may establish a minimum sentence not less than the shortest term fixed by law for the offense. In addition, the statute provides that "the court imposing the sentence shall not fix the term of imprisonment." *Id.* This clear proscription against determinate sentences has been a part of Vermont corrections law since 1898 when the Legislature passed "An Act Relating to Sentences to the State Prison or House of Correction," which first set forth these restrictions in virtually the same language. 1898, No. 127. That same year the Legislature created the parole board. 1898, No. 126 (establishing a board of prison commissioners). Though this first parole board was later found unconstitutional, *In re Conditional Discharge of Convicts*, 73 Vt. 414, 429, 51 A. 10, 15 (1901) (per curiam), the Legislature formally established a parole board and parole procedures again in 1968. 1967, No. 319 (Adj. Sess.). Under this act, the parole board was granted authority to undertake an assessment of the offender and to consider such factors as an offender's individual characteristics and culpability in deciding whether to release an inmate after the minimum term had been served. See 28 V.S.A. § 501 (providing that inmate is eligible for parole consideration subject to any minimum sentence imposed); *id.* § 502(a) (providing that parole board shall interview inmates eligible for parole

considering "all pertinent information regarding an inmate" to determine whether to grant parole).

¶ 65. The State points to the several forms of supervised release now authorized by statute and suggests that the rehabilitative tools available to the Department of Corrections now include more than just parole. The State argues the Legislature effectively condoned fixed sentences in connection with its policy on reductions in term of imprisonment, citing 28 V.S.A. § 811 (2000), which provided for good time reductions off the maximum, but not the minimum term — the Legislature later repealed this provision. See 2005, No. 63, § 3. According to the State, "[b]y allowing for the reduction in maximum terms but not in the minimum terms the Legislature authorized fixed or determinate sentences notwithstanding 13 V.S.A. § 7031(a)."

¶ 66. We will not find an implied repeal of a statute so easily. See State v. Baron, 2004 VT 20, ¶ 10, 176 Vt. 314, 848 A.2d 275 ("When interpreting statutes we presume that there has been no repeal by implication."); State v. Scribner, 170 Vt. 537, 538, 746 A.2d 145, 146 (1999) (mem.) ("Out of judicial respect for legislative authority over lawmaking, we recognize a presumption against implied repeal."). Either we are an indeterminate sentencing state or we are not. If we permit sentences that are not, in fact, indeterminate, then we have eliminated 13 V.S.A. § 7031(a). It is for the Legislature to decide whether it is time for a change in sentencing philosophy.

¶ 67. As we noted in our opinion, the indeterminate sentence law was designed to promote rehabilitation of prisoners by allowing the offender at least the chance to take advantage of the possibility of parole. Supra, ¶ 44. We found the sentence in this case to have effectively closed the window during which the parole board could exercise its discretion, "essentially thwarting the rehabilitative purpose behind both the indeterminate sentence law and our laws governing parole." Id. We remain convinced that, in adopting this proscription on determinate sentences, the Legislature has indicated its intent to transfer some sentencing discretion from the courts to the state's parole authority.

¶ 68. Justice Dooley maintains the position laid out in his dissent to the original opinion: that this issue was not challenged below and should not be addressed by this Court. See supra, ¶¶ 47-49 (Dooley, J., dissenting).

¶ 69. Justice Burgess, likewise, holds to his original dissent on this issue founded, first, on defendant's explicit concession that the underlying minimum and maximum terms were lawful according to the statute and our prior decisions; second, on defendant's failure to raise the argument adopted by the majority; and alternatively, contending that the majority's application of 13 V.S.A. § 7031(a) departs from the legislative direction, rewrites the statute, and is practically unworkable. See *supra*, ¶¶ 50-61 (Burgess, J., dissenting).

*Upon consideration of the motion for reargument the original mandate remains unchanged.*